**FILED**
**CLERK**
4/12/2016 12:09 pm

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------X
ROBERT BRADY,

               Plaintiff,

          -against-

CAROLYN W. COLVIN
ACTING COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,
               Defendant.
---------------------------------------------------------X

**MEMORANDUM OF**
**DECISION & ORDER**
14-CV-5773(ADS)

**APPEARANCES:**

**Office of Christopher James Bowes, Esq.**
*Attorney for the Plaintiff*
54 Cobblestone Drive
Shoreham, NY 11786

**The United States Attorneys' Office, E.D.N.Y.**
*Attorneys for the Defendant*
610 Federal Plaza
Central Islip, NY 11722
      By: Robert W. Schumacher, II, Assistant U.S. Attorney

**SPATT, District Judge**.

      The Plaintiff Robert Brady (the "Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) for review of the final decision of Carolyn W. Colvin, the Acting Commissioner of the Social Security Administration (the "Commissioner"), finding that the Plaintiff is not entitled to disability insurance benefits under Title II of the Social Security Act (the "Act"). Presently before the Court are cross-motions by the parties for a judgment on the pleadings pursuant to Federal Rule Civil Procedure ("Fed. R. Civ. P.") 12(c).

      For the reasons set forth below, the Court denies the motion by the Commissioner, grants the motion by the Plaintiff, and remands this case for further administrative proceedings.

1

## I. BACKGROUND

The Plaintiff was born on March 28, 1966 and is presently fifty years old. (SSA Rec. at 129.) He resides with his wife and three children in Coram, New York. (Id. at 40.) He has a high-school diploma and attended a trade school for one and a half years. (Id. at 30.)

From 1988 to December 2008, he worked as a corrections officer for the New York State Department of Corrections ("DOCS"). (Id. at 191.) On May 16, 2008, the Plaintiff allegedly injured his back while on the job when he attempted to pick up a heavy drill that weighed approximately 70 pounds. (Id. at 275.) In December 2008, the Plaintiff left his job as a corrections officer allegedly due to this injury. (Id. at 191, 235–37.) On an unspecified date, the Plaintiff applied for workers compensation benefits as a result of his back injury. (See id. at 164.) On May 10, 2011, the New York State Workers' Compensation Board (the "Board") rendered a decision classifying the Plaintiff as having a permanent partial disability under Workers' Compensation Law § 15(3)(w). (Id.) As a result, the Board ruled that the Plaintiff was entitled to a $6,000 settlement. (Id.)

After he left his employment at DOCS, the Plaintiff held the following jobs: (i) from March 2009 to May 2010, he worked as a desk clerk at the Gaslight Motor Inn; (ii) from April 2010 to August 2010, he worked in security at Dallas BBQ, a restaurant; and (iii) from May 2010 to October 2011, he worked as an information technology employee at Field Tech. (Id. at 191, 223.) The Court notes that from May 2010 to August 2010, the Plaintiff appeared to be working at both Field Tech and Dallas BBQ. (See id.)

On November 30, 2011, the Plaintiff applied for disability benefits under the Act due to his back issues and depression. (Id. at 126–128.) In the application, the Plaintiff asserted that his disabilities began on May 16, 2008. (Id. at 11, 126–128.) On June 27, 2012, the Social

Security Administration ("SSA") denied his claim for disability benefits. (Id. at 48–55.) On July 3, 2012, the Plaintiff requested a hearing before an administrative law judge. (Id. at 56–58.)

On May 1, 2013, the Plaintiff appeared with John Bigler, Esq., his then-counsel, before Administrative Law Judge Andrew S. Weiss (the "ALJ") for a hearing. (Id. at 29–42.) The Plaintiff testified at the hearing and amended the alleged onset date of his disability from May 16, 2008 to October 10, 2011. (Id. at 32.)

On May 15, 2013, the ALJ rendered a decision, described in more detail below, finding that the Plaintiff was not disabled under the Act (the "May 15, 2013 Decision"). (Id. at 11–20.) On June 4, 2013, the Plaintiff filed an appeal of the May 15, 2013 Decision with the SSA Appeals Council Office of Disability (the "Appeals Council"). (Id. at 247–250.) On July 29, 2014, the Appeals Council denied the Plaintiff's request for review. (Id. at 1–6.)

On October 2, 2014, the Plaintiff commenced this action by filing a complaint alleging that the May 15, 2013 Decision is not supported by the substantial evidence and is based on errors of law.

The Court will address both issues below.

## II. DISCUSSION

### A. The Legal Standard

#### 1. Relevant Five Step Procedure

To qualify for disability benefits under Title II, an individual must be (i) "insured for disability benefits;" (ii) not have attained retirement age; (iii) be a U.S. citizen or a foreign national under certain circumstances not relevant here; and (iv) and have a "disability." 42 U.S.C. § 423(1).

The Act defined "disability" to mean "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In addition, the impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Id. § 423(d)(2)(A).

The SSA regulations set forth a five-step sequential evaluation process for determining whether a claimant's impairment meets the definition of "disability." See 20 C.F.R. § 404.1520. The Second Circuit has implemented that procedure as follows:

> (i) "[T]he [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity";
> (ii) "If he is not, the [Commissioner] next considers whether the claimant has a 'severe impairment' which significantly limits his physical or mental ability to do basic work activities";
> (iii) "If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations";
> (iv) "If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work"; and
> (v) "Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform."

Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999) (quoting Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam)).

"The claimant generally bears the burden of proving that she is disabled under the statute, but 'if the claimant shows that [her] impairment renders [her] unable to perform [her] past work, the burden then shifts to the [Commissioner] to show there is other gainful work in the national

economy which the claimant could perform."' Melville v. Apfel, 198 F.3d 45, 51 (2d Cir. 1999)

(alteration in original) (quoting Carroll v. Secretary of Health and Human Services, 705 F.2d

638, 642 (2d Cir. 1983)); see also Brault v. Soc. Sec. Admin., Com'r, 683 F.3d 443, 445 (2d Cir.

2012)).

## 2. The Standard of Review

'"A district court may set aside the Commissioner's determination that a claimant is not

disabled only if the factual findings are not supported by 'substantial evidence' or if the decision

is based on legal error."' Burgess v. Astrue, 537 F.3d 117, 127 (2d Cir. 2008) (quoting Shaw v.

Chater, 221 F.3d 126, 131 (2d Cir. 2000)).

Thus, judicial review of the Commissioner's final decision requires "two levels of

inquiry." Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987). The district court "first reviews

the Commissioner's decision to determine whether the Commissioner applied the correct legal

standard." Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999); see also Arzu v. Colvin, No. 14

CIV. 2260 (JCF), 2015 WL 1475136, at *8 (S.D.N.Y. Apr. 1, 2015) ("First, the court must

decide whether the Commissioner applied the correct legal standard.") (citing Apfel, 167 F.3d at

773); see also Calvello v. Barnhart, No. 05 CIV. 4254 (MDF), 2008 WL 4452359, at *8

(S.D.N.Y. Apr. 29, 2008), report and recommendation adopted, No. 05 CIV 4254 SCR MDF,

2008 WL 4449357 (S.D.N.Y. Oct. 1, 2008) (same).

Next, the Court examines the administrative record to '"determine if there is substantial

evidence, considering the record as a whole, to support the Commissioner's decision[.]"'

Burgess, 537 F.3d at 128 (quoting Shaw, 221 F.3d at 131). "Substantial evidence means

'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept

as adequate to support a conclusion.'" Id. (quoting Halloran v. Barnhart, 362 F.3d 28, 31 (2d

Cir. 2004)).  However, the Court may not properly "affirm an administrative action on grounds different from those considered by the agency." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999).

"[Substantial evidence] is still a very deferential standard of review — even more so than the 'clearly erroneous' standard."  Brault v. Soc. Sec. Admin., Com'r, 683 F.3d 443, 448 (2d Cir. 2012).  For example. "[a]n ALJ need not recite every piece of evidence that contributed to the decision, so long as the record 'permits us to glean the rationale of an ALJ's decision.'" Cichocki v. Astrue, 729 F.3d 172, 178 n.3 (2d Cir. 2013) (quoting Mongeur v. Heckler, 722 F.2d 1033, 1040 (2d Cir. 1983)).  Moreover, "[e]ven where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings 'must be given conclusive effect' so long as they are supported by substantial evidence." Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) (quoting Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982)).

**B. The Application**

  **1. The Commissioner's Decision**

As noted, in the May 13, 2013 Decision, the ALJ determined that the Plaintiff did not have a "disability" within the meaning of the Act.  In so doing, he first determined that the Plaintiff met the insured status requirement of the Act through December 31, 2016 and then applied the five-step test described above in determining whether the Plaintiff had a qualifying disability.  (SSA Rec. at 13.)

At step 1, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since October 2011.  (Id.)

At step 2, he found that that the Plaintiff had two severe impairments — namely, a "back disorder" and "depression."  (Id.)

At step 3, he found that the Plaintiff's impairments did not "meet[]" or "medically equal" the listed impairments in Appendix 1, 20 C.F.R. § Pt. 404, Subpt. P, App. 1, which constitute *per se* disabling conditions. (Id. at 14.)

At step 4, after reviewing the medical evidence, the ALJ determined the Plaintiff had the residual functional capacity ("RFC") to perform "sedentary work," which he defined as work involving "pushing, pulling, lifting and carrying 10 pounds; sitting six hours out of an eight hour day; [and] standing and walking two hours out of an eight hour day." (SSA Rec. at 14.) In addition, the ALJ specified that the sedentary work must also be subject to "nonexertional limitations restricting the claimant to low stress simple work." (Id.)

In making this RFC determination, the ALJ found that the Plaintiff's subjective statements concerning the "intensity, persistence, and [the] limiting effects" of his symptoms were not entirely credible in light of the evidence in the record. (Id. at 18.) With respect to the Plaintiff's back condition, the ALJ placed "significant weight" on two MRI studies conducted on May 24, 2008 and July 17, 2008, which, according to the ALJ, revealed "normal" and "mild" issues in the Plaintiff's back. (Id.) The ALJ also placed "some weight" on a June 15, 2012 Report by the New York Cooperative Disability Investigations Unit ("NYCDIU") summarizing, among other things, a surveillance investigation of the Plaintiff's activities for a three hour period on June 12, 2012. (See id. at 323.) After observing the Plaintiff attending a consultative exam and going to a McDonald's restaurant, the NYCDIU investigators concluded as follows:

> [The Plaintiff's] gait and station were normal. He sat, stood and walked without any obvious difficulty. The subject entered and exited his vehicle without any obvious difficulty. He did not display any obvious signs of pain or fatigue. The subject appeared to function in an independent manner. He completed all his activities by himself. He was alert and oriented. He was organized and purposeful in his action. He engaged in conversation when appropriate. The subject did not exhibit any obvious signs of depression, suspiciousness or isolation. He had no problem shopping, taking care of chores and being in

crowded places.  The subject did not display any unusual behavior.  He was
engaged in his surroundings.

(Id. at 324.)

With regard to the Plaintiff's mental conditions, the ALJ did not give controlling weight

to the medical source opinion provided by Dr. John McCann, Ph.D., the Plaintiff's treating

psychologist from August 9, 2011 to September 18, 2012, who opined that the Plaintiff's "Major

Depressive Disorder" rendered the Plaintiff "totally and permanently disabled."  (Id. at 19, 304.)

Instead the ALJ gave "greater weight" to the opinions of consultative examinations performed on

behalf of the SSA by Dr. Kathleen Acer, Ph.D., a psychologist; Dr. Saadia Wasty, M.D., an

internist; Dr. J. Kessel, a psychiatrist; and Dr. Andrew Pollack, D.O., an osteopath. (Id. at 19.)

Having determined that the Plaintiff had the RFC to perform "sedentary work" confined

to "low stress jobs," the ALJ concluded that the Plaintiff would not be able to perform his past

relevant work as a corrections officer, a desk clerk, a restaurant security guard, and an

information technology clerk.  (Id.)

Proceeding to the fifth step, the ALJ considered the Plaintiff age at the time of the alleged

disability onset date, which he calculated to be forty-two; the Plaintiff's attainment of a high

school education and ability to communicate in English; and his RFC to perform sedentary work

in a "low stress environment."  (Id. at 19–20.)  Based on these factors, the ALJ determined that

jobs existed in the national economy that the Plaintiff could perform.  (Id. at 20.)

In so doing, the ALJ relied on the Medical–Vocational Guidelines set forth at 20 C.F.R.

Part 404, Subpart P, Appendix 2 (commonly called the "Grid").  (Id.)  The court in Petersen v.

Astrue, 2 F. Supp. 3d 223, 238 (N.D.N.Y. 2012) described the function of the Grid as follows:

The Grid takes into account the claimant's residual functional capacity in
conjunction with the claimant's age, education and work experience. Based on
these factors, the Grid indicates whether the claimant can engage in any other

substantial gainful work which exists in the national economy. Generally the result listed in the Grid is dispositive on the issue of disability.

Petersen v. Astrue, 2 F. Supp. 3d 223, 238 (N.D.N.Y. 2012) (quoting Zorilla v. Chater, 915 F.Supp. 662, 667 (S.D.N.Y. 1996)).

Here, the ALJ concluded that the Grid dictated a finding of not disabled because the Plaintiff's "additional limitations have little or no effect on the occupational base of unskilled sedentary work." (SSA Rec. at 20.)

### 2. The Parties' Claims

The Plaintiff asserts that the Commissioner's decision should be reversed because the ALJ's determination that the Plaintiff had the RFC to perform sedentary work in a low stress environment failed to address (i) the medical evidence showing that he had moderate limitations on his ability to sit for a prolonged period; and (ii) the aggravating affect that his morbid obesity had on his RFC. (See the Pl.'s Mem. of Law 17–21.) He also contends that the ALJ erred at the fifth step of the analysis by failing to call a vocational expert to ascertain whether the Plaintiff's mental limitations would prevent him from performing sedentary jobs. (See id. at 21–23.)

For its part, the Commissioner asserts that the May 13, 2013 Decision should be affirmed because (i) substantial evidence supports the ALJ's determination that the Plaintiff's back impairments did not limit his ability to do sedentary work; (ii) there is no legal authority which requires ALJs to explicitly discuss a claimant's obesity in an RFC analysis; and (iii) substantial evidence supports the ALJ's conclusion at step five of the analysis without resort to a vocational expert. (See the Comm'r's Reply Mem. of Law 1–5.)

As the Court agrees with the Plaintiff's first and third arguments, it will not consider the Plaintiff's second argument with regard to obesity.

### 3. The Plaintiff's Physical Impairments

As discussed above, the parties dispute the propriety of the ALJ's determination that the Plaintiff had the RFC to perform "sedentary work" with the following physical limitations: "pushing, pulling, lifting and carrying 10 pounds; sitting six hours out of an eight hour day; [and] standing and walking two hours out of an eight-hour day." (SSA Rec. at 14.)

The Plaintiff asserts that the ALJ's determination was not supported by substantial evidence because it did not take into account the opinion of Dr. Watsy, an internist who performed a consultative exam of the Plaintiff, that the Plaintiff has "moderate to marked limitation to squatting, kneeling, bending, forward" and "moderate limitation to long periods of sitting, standing, walking, and heavy lifting." (See the Pl.'s Reply Mem. of Law at 1–2.)

In response, the Commissioner contends that (i) the ALJ did not err in failing to consider Dr. Watsy's opinion because sedentary work does not require "six unbroken hours without standing up or shifting position during a workday"; and (ii) Dr. Watsy's assessment of the Plaintiff's limitations is consistent with the ALJ's finding that the Plaintiff had the RFC to perform sedentary work. (See the Comm'r's Reply Mem. of Law at 1–2.). The Court disagrees.

"Social Security Ruling 96–8p provides that an individual's RFC 'is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis.'" Cichocki v. Astrue, 729 F.3d 172, 176 (2d Cir. 2013) (quoting SSR 96–8p, 1996 WL 374184, at *1 (July 2, 1996)).

"When making a residual functional capacity determination, the ALJ considers a claimant's physical abilities, mental abilities, and symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis." Petersen v. Astrue, 2 F. Supp. 3d 223, 233 (N.D.N.Y. 2012) (citing 20 C.F.R. § 404.1545(a)); see also

Cichocki, 729 F.3d at 176 ("Before an ALJ classifies a claimant's RFC based on exertional levels of work (i.e., whether the claimant can perform sedentary, light, medium, heavy, or very heavy work), he 'must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945.'") (quoting SSR 96–8p, 1996 WL 374184 at *1).

In addition, "[w]hen determining a claimant's RFC, the ALJ is required to take the claimant's reports of pain and other limitations into account, . . . . but is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." Genier, 606 F.3d at 49 (citations omitted).

SSA regulations provide a two-step process for evaluating the credibility of a claimant's assertions of pain. "At the first step, the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged."' Id. (citing 20 C.F.R. § 404.1529(b)). "If the claimant does suffer from such an impairment, at the second step, the ALJ must consider 'the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence' of record." Id. (alteration in original) (quoting 20 C.F.R. § 404.1529(a)); see also SSR 96–7p, 1996 WL 374186, at *2 (July 2, 1996) ("[O]nce an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities.").

"In evaluating the intensity and persistence of [the claimant's] symptoms, [the ALJ] consider[s] all of the available evidence, including [the claimant's] history, the signs and laboratory findings, and statements from [the claimant], [the claimant's] treating or nontreating source, or other persons about how your symptoms affect [the claimant]." 20 C.F.R. § 404.1529(c). Relevant factors, include:

> (i) the claimant's "daily activities"; (ii) "[t]he location, duration, frequency, and intensity of [the claimant's] pain or other symptoms"; (iii) "[p]recipitating and aggravating factors"; (iv) "[t]he type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms"; (v) "[t]reatment, other than medication, you receive or have received for relief of your pain or other symptoms"; (vi) "[a]ny measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.)"; and (vii) "[o]ther factors concerning your functional limitations and restrictions due to pain or other symptoms."

Id. at § 404.1529(c)(3).

In the present case, the Plaintiff testified at the May 1, 2013 hearing with regard to his back condition, that he experiences "continuous pain that shoots from my lower back down my leg and into my groin area." (SSA Rec. at 38.) According to his testimony, his daily activities include walking his daughter to the bus, driving, and going shopping once a month. (Id. at 40–41.)

In the May 13, 2013 Decision, the ALJ applied the correct two-step standard in assessing the Plaintiff's credibility. (See id. at 18.) First, he determined that the Plaintiff's medically determined impairments — namely, depression and back pain — could reasonably be expected to produce the symptoms alleged. (Id.) However, at the second step, he found that the "Plaintiff's statements concerning the intensity, persistence, and limiting effects of [his] symptoms" were not credible to the extent they claimed that the Plaintiff was totally disabled and could not perform sedentary work. (Id.)

In so doing, the ALJ relied on a statement in Dr. Abraham's May 24, 2008 report that the Plaintiff had "Bilevel disc bulding, worse at the LS-SS1 level with finding suspicious for an exiting right L5 nerve root impingement." (See id. at 17, 265.) He also relied on a statement in Dr. Mebrahtu's May 24, 2008 report, "This electrical study reveals the presence of moderate active right L3–4 lumbar radiculopathy." (See id. at 18, 267.) He also cited to a November 25, 2008 report by Dr. Guo, in which Dr. Guo concluded that the Plaintiff had "Lumbroascral radiculopathy affecting right L3 through L5 roots with normal MRI of the lumbosacral spine." (See id. at 18, 270.)

However, these reports do not explain what "mild" or "moderate" "lumbar radiculopathy" means; what symptoms the condition produces; and whether those symptoms would prevent the Plaintiff from performing the functions required for "sedentary work," which according to the ALJ's RFC determination involve "sitting six hours out of an eight hour day" and "standing and walking two hours of out an eight hour day." Thus, the Court finds that these records, without more, do not provide the substantial evidence required to discount the Plaintiff's credibility.

The ALJ also placed "some weight" on a report by NYCDIU investigators, who on June 12, 2012, observed the Plaintiff run several errands without showing any obvious signs of discomfort. (Id. at 18.) However, surveillance of the Plaintiff for a three-hour period does not provide relevant evidence of the Plaintiff's ability to sit for six hours out of an eight hour day or stand and walk for two hours of an eight hour day. Thus, in the Court's view, this investigative report also does not provide substantial support for the ALJ's RFC determination.

In addition, as the Plaintiff correctly points out, there is other evidence in the record which may support the Plaintiff's statements regarding his physical symptoms. Specifically, in

an April 13, 2012 report, Dr. Wasty, an internist who performed a consultative exam of the Plaintiff, concluded that the Plaintiff had "moderate to marked limitation to squatting, kneeling, [and] bending forward"; and "moderate limitation to long periods of sitting, standing, walking, and heavy lifting." (Id. at 312.) In a June 12, 2012 report, Dr. Pollack concluded that Plaintiff "has a moderate restriction in bending, lifting, and carrying"; "has a mild restriction in walking, standing, and sitting"; and "should avoid activities which require heavy exertion." (Id. at 317.)

The use of the terms "mild," "moderate," and "marked," to describe the Plaintiff's restrictions in "sitting, standing, and walking" are the kinds of vague terms, which courts have found insufficient to support a determination that a Plaintiff is not disabled under the Act. See Selian, 708 F.3d at 421 ("Dr. Naughten's opinion is remarkably vague. What Dr. Naughten means by 'mild degree' and 'intermittent' is left to the ALJ's sheer speculation."); see also Curry v. Apfel, 209 F.3d 117, 123 (2d Cir. 2000) ("While the opinions of treating or consulting physicians need not be reduced to any particular formula, Dr. Mancheno's opinion is so vague as to render it useless in evaluating whether Curry can perform sedentary work."), *superseded by statute on other grounds, as recognized in* Douglass v. Astrue, No. 11–3325–cv, 2012 WL 4094881, at *1 (2d Cir. Sept. 19, 2012) (summary order); Woodford v. Apfel, 93 F. Supp. 2d 521, 529 (S.D.N.Y. 2000) ("The ALJ was not permitted to speculate about Woodford's capacity to remain seated based on these medical reports; rather, he had a duty to defer his decision until he procured medical evidence that specifically discussed Woodford's capacity to remain seated for six hours."). Accordingly, at the very least, the ALJ should have requested clarification from both physicians at the May 1, 2013 hearing.

The Court is not persuaded by the Commissioner's arguments to the contrary.

First, Commissioner asserts that the "[SSA] regulations do not mandate the presumption that all sedentary jobs in the United States require the worker to sit without moving for six hours, trapped like a seat-belted passenger in the center seat on a transcontinental flight." Halloran v. Barnhart, 362 F.3d 28, 33 (2d Cir. 2004). Thus, it contends that the opinions of Dr. Wasty and Dr. Pollack stating that the Plaintiff had "mild" or "moderate" limitations on his ability to sit or stand for prolonged periods do not support a finding that the Plaintiff could not perform "sedentary work." (The Comm'r's Mem. of Law at 2.)

However, the ALJ specified in his RFC that the Plaintiff could only perform "sedentary work" that involved "sitting six hours out of an eight hour day" and "walking two hours out of an eight hour day." (SSA Rec. at 14.) Thus, the Plaintiff's ability to sit or stand for prolonged periods is directly relevant to the RFC set forth in the May 13, 2013 Decision and must be supported by substantial evidence. The opinions by Dr. Wasty and Dr. Pollack are vague on this point, and no other evidence in the record directly speaks to the Plaintiff's ability to stand or sit for prolonged periods. Therefore, the Court cannot conclude that the ALJ's RFC determination is supported by the substantial evidence.

Second, the Commissioner asserts that the opinion of Dr. Watsy that the Plaintiff has a "moderate limitation to long periods of sitting, standing walking, and heavy lifting," and the opinion of Dr. Pollack that the Plaintiff has a "mild restriction in walking, standing, and sitting" are consistent with the ALJ's finding that the Plaintiff has the RFC to perform the full range of sedentary work. (The Comm'r's Reply Mem. of Law at 2.)

The Commissioner is correct that some courts have found that similar language in medical opinions to support an RFC to perform light or sedentary work. For example, the Plaintiff cites to Tankisi v. Comm'r of Soc. Sec., 521 F. App'x 29 (2d Cir. 2013). There, the

Second Circuit rejected a claimant's contention on appeal that the ALJ erred in placing substantial weight on the opinions of consultative physicians that the plaintiff had "[m]ild to moderate limitation for sitting for a long time, standing for a long time, walking for a long distance, pushing, pulling, or heavy lifting. Her headache may interfere with her daily routine." Id. at 34. The Court did not find the opinions of the physicians to be "incomplete or vague," and in any event, the Court found that the opinions "were supported by numerous medical record reports and the conclusions of a state agency consultant." Id. Accordingly, the Court found that the ALJ properly relied on them in finding that the Plaintiff had the RFC to perform "light work." Id.; see also Rodriguez v. Barnhart, No. 01 CIV. 7373 (SAS), 2002 WL 31307167, at *5 (S.D.N.Y. Oct. 15, 2002) ("The treating and consulting physicians opined that plaintiff was capable of sitting, standing, walking, lifting, carrying, and handling of objects with moderate limitations . . . . These medical opinions were consistent with the ALJ's finding that plaintiff was capable of performing sedentary work.").

The Court declines to follow these decisions for several reasons. As an initial matter, the Court notes that summary orders and unpublished district court decisions are not binding on this Court. Thus, to the extent that these decisions are analogous, the Court respectfully declines to follow them.

Furthermore, this case is factually distinguishable. That is because in this case, the opinions of Dr. Watsy and Dr. Schwartz are not supported by the substantial weight of medical evidence. Indeed, as described earlier, there is little or no evidence explaining how the Plaintiff's "lumbar radiculopathy" affects his ability to sit or stand for prolonged periods. The only medical evidence that appears to directly relate to the Plaintiff's ability to perform sedentary

work is the opinions of Dr. Watsy and Dr. Schwartz, which state that the Plaintiff has "moderate" and "mild" limitations in sitting for prolonged periods.

In the absence of any other direct medical evidence on this point, the Court finds that the use of the terms, "mild" and "moderate," to describe the Plaintiff's limitations with regard to sitting and standing do not provide enough to information to allow the ALJ to make the necessary inference that the Plaintiff could perform the full range of sedentary work. In this respect, the cases cited earlier, as well as those cited below, buttress the Court's conclusion. See, e.g., Simmons v. Colvin, No. 15-CV-0377 (MKB), 2016 WL 1255725, at *14 (E.D.N.Y. Mar. 28, 2016) ("Dr. Skeene opined that Plaintiff has 'moderate limitations for general activity.' This assessment is too vague to provide sufficient support for the ALJ's specific functional assessments that Plaintiff could, for example, carry ten pounds occasionally and less than ten pounds frequently and sit for six hours during an eight-hour workday."); Hilsdorf v. Comm'r of Soc. Sec., 724 F. Supp. 2d 330, 348 (E.D.N.Y. 2010) ("Park's use of the term 'mild' did not provide enough information to allow the ALJ to make the necessary inference that Plaintiff could perform sedentary work."); Dambrowski v. Astrue, 590 F. Supp. 2d 579, 583 (S.D.N.Y. 2008) ("[S]uch an inference is again not reasonable from Dr. Aron's conclusion that plaintiff is 'moderately impaired in activities requiring lifting, carrying and traveling secondary to his ulcerative colitis.' This type of vague and conclusory medical determination has been rejected by the Second Circuit as insufficient to satisfy the ALJ's fifth-step burden.").

For these reasons, the Court finds that there is not substantial evidence in the record supporting the ALJ's determination that the Plaintiff had the RFC to perform sedentary work that involves "sitting six hours out of an eight hour day" and "standing and walking two hours out of

an eight-hour day." On remand, the ALJ should seek further clarification from the Plaintiff's consultative and treating physicians on this issue.

### 4. As to the Plaintiff's Mental Impairments

As noted, the Plaintiff also claimed to suffer a total disability as a result of symptoms relating to depression. The ALJ credited some of the Plaintiff's testimony but found that the Plaintiff's mental symptoms did not render him totally disabled. Rather, the ALJ found that the Plaintiff maintained the ability to perform sedentary work limited to "low stress simple work." (SSA Rec. at 14.)

In reaching this conclusion, the ALJ did not afford "controlling weight" to the opinion of Dr. McCann, a psychologist who treated the Plaintiff weekly from August 9, 2011 to September 18, 2012. (Id. at 18–19.) Specifically, in a March 21, 2012 report, Dr. McCann stated:

> [The Plaintiff's] depression has significantly impaired his ability to relate to others, thus limiting his social interaction, and he is unable to effectively carry out daily responsibilities and routines without marked difficulty. He also reports excessive apprehension, excessive weight gain, worry, and nightmares, which are indicative of anxiety . . . . Objective testing and observed symptoms confirm the diagnosis of [a] Major Depressive Disorder. In my professional opinion, [the Plaintiff] is totally and permanently disabled from gainful employment.

(Id. at 304.)

Under the so-called "treating physician rule," "the opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008) (quoting 20 C.F.R. § 404.1527(d)(2)). However, "the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the

opinions of other medical experts." Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004) (per curiam).

In order to override the opinion of the treating physician, the Second Circuit has held that:

> the ALJ *must explicitly consider*, *inter alia*: (1) the frequently, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.

Selian, 708 F.3d at 418 (citing Burgess, 537 F.3d at 129) (emphasis added); see also 20 C.F.R. § 404.1527(c).

"After considering the above factors, the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.'" Burgess, 537 F.3d at 129 (quoting Halloran, 362 F.3d at 33). The Second Circuit has not hesitated to remand cases "when the Commissioner has not provided 'good reasons' for the weight given to a treating physicians opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion." Halloran, 362 F.3d at 33; see also Sanders v. Comm'r of Soc. Sec., 506 F. App'x 74, 77 (2d Cir. 2012) (Summary Order) ("This Court has consistently held that the failure to provide good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand."); Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998) ("[B]ecause the Commissioner failed to provide plaintiff with 'good reasons' for the lack of weight attributed to her treating physician's opinion as required by SSA regulations, we conclude that the proper course is to direct that this case be remanded to the SSA[.]").

Here, the ALJ correctly cited to the four factors described above in assessing the weight of Dr. McCann's opinion. However, he did not apply the factors in a meaningful or coherent manner.

With regard to the first factor and the fourth factor, he did not consider the amount of time Dr. McCann saw the Plaintiff, which in this case was weekly for more than year, nor did he apparently consider Dr. McCann's status as a specialist in evaluating his opinion.

With regard to the second and third factors, in considering the medical evidence supporting Dr. McCann's opinion, the ALJ found stated that the "opinions of Dr. Miller, Dr. Acer, Dr. Wasty, Dr. Pollack, and Dr. Kessel are entitled to greater weight" than the opinion of Dr. McCann. (Id. at 19.) Although of all of these doctors performed consultative examinations on the Plaintiff, the ALJ stated that their opinions "are entitled to the greater weight in this adjudication as the consultants were provided with the entirety of the treatment record." (Id.)

The SSA regulations state:

> [T]he opinion of a State agency medical or psychological consultant or other program physician or psychologist may be entitled to greater weight than a treating source s medical opinion if the State agency medical or psychological consultant's opinion is based on a review of a complete case record that includes a medical report from a specialist in the individual's particular impairment which provides more detailed and comprehensive information than what was available to the individual's treating source.

SSR 96-6P, 1996 WL 374180 (S.S.A. July 2, 1996)

However, in this case, the ALJ failed to explain why the consultative physicians were provided more detailed and comprehensive information than what was available to Dr. McCann, let alone give any comprehensive reasons for assigning less weight to Dr. McCann's opinion than to the opinions of the consultative physicians. Such a cursory analysis does not provide the "good reasons" required to disregard portions of a treating physician's opinion. See Newbury v.

Astrue, 321 F. App'x 16, 17 (2d Cir. 2009) (Summary Order) ("We vacate and remand for further consideration because the ALJ and the Appeals Council failed to give any reasons for not crediting two assessments of Newbury's condition by her treating psychiatrist, Dr. Jeffrey Grace."); Featherly v. Astrue, 793 F. Supp. 2d 627, 631-32 (W.D.N.Y. 2011) (remanding a social security case because "[w]hile summarizing the opinions rendered by plaintiff's various treating and examining physicians and rendering conclusions based upon the record as a whole, the ALJ's decision makes scant reference to the weight given to those opinions, except to note that the opinions of a consultative examiner and state agency disability analyst 'have been considered in determining the plaintiff's RFC,' (Tr. 25), and to generally refer to the opinions of two of plaintiff's treating physicians as having been assigned 'significant weight' and 'no' weight, respectively, with only cursory discussion of the reasons therefor.") (alteration added).

Furthermore, in a December 3, 2012 report, Dr. Schwartz, a psychologist who also treated the Plaintiff, stated:

> Since 10/3/12 this examiner has seen [the Plaintiff] weekly with no apparent improvement. His pain, lethargy, social isolation and paranoid ideation make it unlikely that his Major Depressive Disorder (DSM-IV = 296.20) which is likely secondary to chronic back pain, will not improve sufficiently to all how him to perform meaningful employment.

(Id. at 399.)

The ALJ failed to consider Dr. Schwartz's opinion; what weight, if any, Dr. Schwartz's opinion was entitled to; and why the opinions of consultative physicians were given more weight than the opinions of Dr. McCann and Dr. Schwartz, the Plaintiff's two treating physicians.

Accordingly, the Court finds that the ALJ did not provide "good reasons" for according less weight to the opinions of Dr. McCann and Dr. Schwartz, the Plaintiff's treating physicians, and remand is also warranted on that basis. See Aung Winn v. Colvin, 541 F. App'x 67, 70 (2d

Cir. 2013) (Summary Order) (remanding a social security case because "the ALJ rejected the medical opinions of Winn's treating physicians in favor of the opinions of Dr. Sirotenko (who was not a treating physician and only performed a consultative medical examination) and the non-physician State Agency disability analyst without providing good reasons for discrediting the treating physicians' opinions."); Joseph v. Barnhart, 302 F. Supp. 2d 45, 55 (E.D.N.Y. 2004) (Spatt, J) ("In addition, the ALJ did not consider Dr. Inserra and Dr. Dragon's assessment of spondylolysis and bulging discs which were also revealed in the x-rays and MRI. The ALJ failed to set forth any reasons for not crediting these findings. Nor did the ALJ adequately explain why the State agency doctors' reports were more credible than those of the plaintiff's treating physicians. The treating physicians' opinions were entitled to substantial weight, and the failure of the ALJ to give 'good reasons' for failing to give those opinions any weight constituted legal error.").

### 5. As to the Determination that the Plaintiff Could Perform Other Work

As noted earlier, at the final step of the analysis, the ALJ concluded that the Plaintiff was not disabled because (i) he "had the residual functional capacity to perform the full range of sedentary work, considering [the Plaintiff's] age, education, and work experience"; and (ii) there was work in the national economy that the Plaintiff could perform. (SSA Rec. at 20.)

With regard to the second issue, the Plaintiff relied on Commissioner's Medical–Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P, App. 2, which as explained earlier, are commonly referred to as the "Grid." "The Grid classifies work into five categories based on the exertional requirements of the different jobs. Specifically, it divides work into sedentary, light, medium, heavy and very heavy, based on the extent of requirements in the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, and pulling." Petersen, 2 F.

Supp. 3d at 238 (quoting <u>Zorilla v. Chater</u>, 915 F.Supp. 662, 667 n.2 (S.D.N.Y. 1996)).  "Upon consideration of the claimant's residual functional capacity, age, education, and prior work experience, the Grid yields a decision of 'disabled' or 'not disabled.'"  <u>Id.</u> (quoting 20 C.F.R. § 404.1569 , Pt. 404 Subpt. P, App. 2, 200.00(a)); <u>see also</u> <u>Rosa</u>, 168 F.3d at 78 ("'The grids 'take[] into account the claimant's residual functional capacity in conjunction with the claimant's age, education and work experience.' . . . . Based on these considerations, the grids indicate whether the claimant can engage in any substantial gainful work existing in the national economy.")  (quoting <u>Zorilla</u>, 915 F. Supp. at 667).

However, "[i]f a claimant has nonexertional limitations that 'significantly limit the range of work permitted by his exertional limitations,' the ALJ is required to consult with a vocational expert" to determine whether there is other work in the national economy that the claimant can perform.  <u>Zabala v. Astrue</u>, 595 F.3d 402, 410 (2d Cir. 2010) (quoting <u>Bapp v. Bowen</u>, 802 F.2d 601, 605 (2d Cir. 1986)).  A nonexertional impairment is "an impairment not related to strength." <u>Selian</u>, 708 F.3d at 421.  Such an impairment, "'significantly limit[s]' a claimant's range of work when it . . . so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity.'"  <u>Id.</u> (quoting <u>Bapp</u>, 802 F.2d at 605–06) (alteration in original).

In the present case, the ALJ determined that the Plaintiff's "additional limitations have little or no effect on the occupational base of unskilled sedentary work."  (SSA Rec. at 20.) Although the ALJ does not specify what those "additional limitations" are, it appears that he is referring to the Plaintiff's mental impairments, which he found limited the Plaintiff to "low stress simple work."  (<u>See</u> <u>id.</u> at 14.)

 However, as discussed earlier, the ALJ failed to properly resolve the conflict between the

opinions of the Plaintiff's treating physicians, Dr. McCann and Dr. Schwartz, who both stated that the Plaintiff could not perform any work due to his depression, and the opinions of Dr. Acer, Dr. Pollack, and Dr. Kessel, who performed consultative mental evaluations of the Plaintiff, and concluded that he could perform work involving simple tasks.  Because the ALJ's conclusion that the Plaintiff's mental impairments were not negligible was based on a flawed RFC analysis, the Court finds his reliance on the Grid is also not supported by the substantial evidence.  See Chaparro v. Colvin, No. 15 CIV. 2349 (AJP), 2016 WL 213430, at *18 (S.D.N.Y. Jan. 19, 2016) ("[C]ourts in this district consistently have found it to be reversible error for ALJs to rely solely on the Grids when a plaintiff has moderate psychiatric limitations resulting in nonexertional limitations.") (collecting cases); see also Hamilton v. Colvin, 8 F. Supp. 3d 232, 245 (N.D.N.Y. 2013) ("In addition, the ALJ's reliance on the Grids was based upon her determination that Plaintiff retained the RFC to perform the full range of sedentary work, which determination was flawed for the reasons outlined above. As such, this aspect of the ALJ's decision will also need to be revisited on remand.").

For this additional reason, the Court remands this case for further administrative proceedings.  If the ALJ chooses to rely on the Grid again on remand, the ALJ should provide more explicit reasoning as to why the Plaintiff's non-exertional mental impairments are not negligible and render the testimony of a vocational expert not necessary in this case.

### III. CONCLUSION

For the foregoing reasons, the Court denies the Commissioner's motion for a judgment on the pleadings, grants the Plaintiff's motion for a judgment on the pleadings, reverses the decision of the Commissioner, and remands this case for further administrative proceedings.

The Clerk of the Court is directed to close this case.

**SO ORDERED.**
Dated: Central Islip, New York
April 12, 2016

_/s/ Arthur D. Spatt_____
   ARTHUR D. SPATT
United States District Judge